# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LARRETTA COCHRAN,                                    Case No. 1:12-cv-772
      Plaintiff,                                     Dlott, J.
                                    Litkovitz, M.J.

      vs.

COMMISSIONER OF                                      **REPORT AND**
SOCIAL SECURITY,                                     **RECOMMENDATION**
      Defendant.

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 12) and the Commissioner's response in

opposition.[1] (Doc. 16).

## I.  Procedural Background

      Plaintiff filed applications for DIB and SSI in October 2008, alleging disability since

May 1, 2007, due to mental illness, back pain, knee pain, and severe migraines. Plaintiff's

applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested

and was granted a de novo hearing before Administrative Law Judge (ALJ) Samuel A. Rodner, at

which plaintiff and a vocational expert (VE) appeared and testified. On March 25, 2011, the ALJ

issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by

the Appeals Council was denied, making the decision of the ALJ the final administrative

decision of the Commissioner.

---

[1]Plaintiff filed a reply memorandum on November 12, 2013. (Doc. 19). The Court previously granted plaintiff an extension of time until July 25, 2013, to file her reply brief. (Docs. 17, 18). As plaintiff's reply brief was filed nearly four months after the deadline, without an accompanying motion for a further extension of time

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the

---

demonstrating good cause for the late filing, it was not considered in the instant determination.

sequential evaluation process.  *Id.; Wilson* v. *Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2012.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since May 1, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: chronic low back pain with degenerative disc disease in the lumbar spine, chronic pain syndrome, mood disorder NOS and generalized anxiety disorder (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift/carry up to twenty pounds occasionally and ten pounds frequently, si[t] for up to six hours in an eight-hour workday, stand/walk for up to eight-hours in an eight-hour workday, and push/pull unlimitedly within the lift/carrying restrictions.  The [plaintiff] can only occasionally crouch, stoop, or climb ramps, stairs, ladders, ropes, or scaffolds, and she can frequently balance, kneel, and crawl.  She must be allowed to alternate between sitting and standing every hour for two to three minutes.  As a result of her mental impairments, the [plaintiff] has the ability to understand, remember,

and carry out simple instructions and many that are more complex. Her concentration is adequate for routine, repetitive tasks, and her social functioning is adequate. The [plaintiff]'s stress tolerance is limited which shows the [plaintiff] can adapt to work settings in which duties are routine and predictable. Also, she cannot work in an environment with rapid pace or with strict production quotas.

6. The [plaintiff] is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1966 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-24).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v.*

---

[1]Plaintiff's past relevant work was as a restaurant server.  (Tr. 22, 201-02).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff raises three assignments of error. First, plaintiff argues that the ALJ erred by finding her knee pain and migraine headaches were not severe impairments. Second, plaintiff contends the ALJ erred by failing to properly articulate the reasoning behind his

findings.  Specifically, plaintiff contends that the ALJ's credibility analysis is flawed and the ALJ did not adequately explain why he gave "little weight" to the medical opinions of plaintiff's treating physician.  Third, plaintiff argues that the ALJ erred in weighing the medical opinions of record.  Plaintiff contends the ALJ erroneously relied on the opinions of the non-examining state agency doctors to the exclusion of the later evidence entered into the record, demonstrating the ALJ's failure to account for the fluctuations in plaintiff's level of functioning over time.

1.  The ALJ did not err in assessing the severity of plaintiff's knee and migraine impairments.

Plaintiff claims the ALJ erred by finding that her knee and migraine conditions were not severe impairments at Step Two of the sequential disability analysis.  Plaintiff argues that the ALJ improperly stated the standard for whether an impairment is severe and failed to cite any evidence supporting his nonseverity findings.  Plaintiff asserts that because her knee and migraine impairments cause work limitations not included in the ALJ's RFC formulation, the failure to identify these conditions as severe is not harmless error.

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle.  20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1).  Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).  Plaintiff is not required to establish total disability at this level of the sequential evaluation.  Rather, the severe impairment requirement is

a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act.  *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984).  An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience."  *Farris v. Sec'y of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)).  The severity requirement is a "*de minimus* hurdle" in the sequential evaluation process.  *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).  *See also Rogers*, 486 F.3d at 243 n.2.

Plaintiff's primary argument is that the ALJ cited an incorrect, more stringent standard for determining whether an impairment is severe.  As stated above, the relevant inquiry in assessing severity is whether an impairment causes *significant limitations* in one's mental or physical ability to do work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ determined that plaintiff's knee and migraine conditions were not severe impairments because "there is no indication that the [plaintiff] is regularly prescribed medication for these conditions or that they would cause *more than a significant impact* on [her] ability to perform work related activities." (Tr. 16) (emphasis added).  Plaintiff asserts that the ALJ erroneously stated and applied this heightened "more than a significant impact" standard and, thus, his finding that plaintiff's knee and migraine conditions are nonsevere is without substantial support.  The Court disagrees.

While the ALJ misstated the standard in his decision, there is simply no evidence supporting a determination that plaintiff's migraine headaches and knee pain are severe.  With respect to plaintiff's migraine headaches, plaintiff has failed to identify any medical finding or opinion evidence diagnosing this condition or showing that migraines headaches have an impact

7

on plaintiff's functional abilities.  The only references in the record to this condition are from

plaintiff's hearing testimony and her subjective statements to her doctor.  *See* Tr. 380 (plaintiff

reported a headache in October 2007 following a fall down stairs); Tr. 54-55 (plaintiff testified

that she has experienced migraine headaches several times a week for a couple of years which

she treats with Ibuprofen; these migraines do not cause nausea or photophobia).  Notably, the

ALJ deemed plaintiff's testimony as to the limiting effects of her headaches not credible (Tr. 19)

and plaintiff does not challenge this determination.  *See Williams v. Comm'r of Soc. Sec.*, __ F.

Supp.2d __, 2013 WL 5476019, at *10 (E.D. Mich. Sept. 30, 2013) (no error where ALJ failed to

classify migraine headaches as severe impairment where only evidence of limiting effects of

headaches was plaintiff's testimony which was deemed not fully credible).  *See also* 20 C.F.R. §§

404.1508, 416.908 (impairment must be established by medical evidence consisting of signs,

symptoms and laboratory findings, and not solely by claimant's statement of symptoms); §§

404.1528(a), 416.928(a) (claimant's own description of impairment is not enough to establish

existence of that impairment).  In the absence of any documented treatment of plaintiff's self-

diagnosed migraine headaches or medical opinion that they functionally limit her ability to do

work, the ALJ's finding that plaintiff's headaches do not constitute a severe impairment is

substantially supported by the record evidence.

Likewise, there is little medical evidence in the record regarding plaintiff's knee

impairment.  In October 2007, plaintiff reported to the emergency room for injuries to her left

knee, left shoulder, and face after falling down some stairs.  (Tr. 379-84). Plaintiff explained that

she fell because her right leg gave out on her and that she has a history of right leg weakness

secondary to sciatica.  (Tr. 380).  The emergency room physician found plaintiff had swelling,

bruising, and an abrasion over the right knee with full range of motion of the joint.  (Tr. 381-82).

X-rays of the left knee and left shoulder showed soft tissue swelling over the knee, but no

fracture in either location and no dislocation noted.  (Tr. 382).  In April 2008, eight months after

the fall, plaintiff reported prepatellar swelling and redness when she stood.  (Tr. 386).  However,

her physician did not diagnose a specific knee impairment or prescribe any treatment.  *Id*.

Notably, plaintiff did not report any difficulty walking or other functional limitation due to the

knee redness and swelling and the record evidence demonstrates that plaintiff had a normal gait.

*See* Tr. 350.  Plaintiff has pointed to no objective evidence that she has any diagnosable knee

condition and no medical doctor has opined that she has physical limitations due to a knee

condition.  In the absence of any affirmative evidence showing that plaintiff is functionally

limited due to a knee impairment, the ALJ's nonseverity finding is substantially supported.

Plaintiff further argues that the ALJ misstated the record in determining that plaintiff was

not prescribed medication for her headaches and/or knee impairment as the pain medication she

is prescribed "primarily for [her] lumbar degenerative disc disease is not limited to treating back

pain, and it will undoubtedly work just as well on her knee pain."  (Doc. 12 at 8).  Plaintiff's

assertion, while possibly true, is also irrelevant.  The fact that plaintiff is prescribed medications

that can be used to treat a host of ailments does not necessarily mean that she suffers from

conditions for which she is not being treated.  It is incumbent upon plaintiff to put forth evidence

demonstrating that she has severe headaches and knee impairments.  *Rabbers*, 582 F.3d at 652.

The record here simply does not demonstrate that these conditions are severe.  Accordingly, the

undersigned finds that the ALJ's nonseverity determinations are substantially supported and

plaintiff's first assignment of error should be overruled.

2.  <u>The ALJ did not err in articulating the rationale behind his decision</u>.

Plaintiff's second assignment of errors is an assortment of discrete critiques of the form and substance of the ALJ's decision.  Plaintiff asserts the ALJ erred for the following reasons: (1) he discounted plaintiff's credibility due to inconsistencies in the record but failed to cite to actual inconsistent statements; (2) he did not adequately explain his decision to give "little weight" to plaintiff's treating physician, Timothy Smith, D.O.[2]; (3) he improperly interpreted the medical evidence of plaintiff's pain levels; and (4) his decision is rife with typographical errors which indicates he did not closely analyze plaintiff's medical records and disability claims.  (Doc. 12 at 9-13).  Plaintiff's arguments are not well-taken.

First, plaintiff argues the ALJ failed to cite to an actual inconsistency in her statements when he was comparing plaintiff's activities of daily living with her self-reports on the amount of weight she can lift.  (Doc. 12 at 10, citing Tr. 20).  At the hearing, plaintiff testified that she grocery shops a couple of times a week on her own and does 12 to 13 loads of laundry at a time at a laundry mat with friends' assistance.  (Tr. 61-63).  From this testimony, the ALJ inferred that plaintiff was capable of lifting at least five pounds which he asserted was "inconsistent" with her testimony that she can only lift five to eight pounds.  (Tr. 20; *see* Tr. 64 (plaintiff testified that she could lift, at most, five to eight pounds but that she experienced extreme pain after holding an eight pound ham for approximately ten minutes)).  Clearly, the ALJ's statement – that plaintiff's testimony that she can lift five to eight pounds is inconsistent with her being able to lift five pounds – is incorrect.  Nevertheless, the ALJ's credibility determination is otherwise substantially supported by the record evidence.  As noted by the Commissioner, plaintiff's

---

[2]Plaintiff's argument that the ALJ improperly weighed Dr. Smith's opinions is addressed *infra* in connection with her third assignment of error.

testimony that she is limited to lifting five to eight pounds is inconsistent with her reports to the Social Security Administration that she is able to lift 10 to 15 pounds. *See* Tr. 221. In addition, the ALJ cited inconsistencies between plaintiff's reports on her social life to the Social Security Administration and to the consultative examiner. (Tr. 20). The ALJ cited several other reasons for discounting plaintiff's credibility (Tr. 19-20), which plaintiff does not contest in her statement of errors. Although the ALJ erroneously identified a conflict in the evidence regarding plaintiff's lifting ability, his determination that plaintiff was not entirely credible based on his other stated reasons is supported by substantial evidence.

Second, to the extent plaintiff argues that the ALJ oversimplified the record in finding that plaintiff's negative neurologic examination results support a non-disability finding, this argument mischaracterizes the ALJ's decision. The ALJ, in discussing Dr. Smith's opinions on plaintiff's physical limitations, stated that one reason he declined to give the opinions controlling weight was because they were not supported by Dr. Smith's own testing. *See* Tr. 22. Though Dr. Smith's progress notes indicate the presence of radicular neuropathy symptoms, the ALJ correctly pointed out "there is never any testing to document this. All of Dr. Smith's neurological exams are said to be without any acute findings. From June 29, 2010 through February 10, 2011, there are no musculoskeletal examinations at all, and all of the neurological examinations remain negative." (Tr. 22). While plaintiff asserts that negative neurologic examinations are not a proper basis for finding a pain-based impairment to be not disabling, this is not the basis for the ALJ's decision. Rather, the ALJ simply discounted Dr. Smith's opinion due to its inconsistency with his own treatment notes and examination findings. Citing to negative neurologic examinations for this purpose is entirely proper. *See Price v. Comm'r of*

11

*Soc. Sec.*, 342 F. App'x 172, 176-77 (6th Cir. 2009) (inconsistency between treating physician's opinion and treatment notes is proper basis for discounting opinion).

Third, insofar as plaintiff contends that her reports of low-threshold pain should have been considered equivalent to another individual's high-threshold pain, this argument is similarly without merit.  In recounting the evidence of plaintiff's subjective reports of pain, the ALJ stated that "[plaintiff]'s pain scale, the vast majority of the time, is a three or below, presumably on a scale of one to ten with ten being the worst imaginable."  (Tr. 22).  Plaintiff does not dispute that the ALJ's statement accurately reflects her physician's records.  Instead, she argues that because Dr. Smith described plaintiff as "uncomfortable appearing" and "tearful" while she was reporting a pain level of four (Tr. 546), that *her* pain level of four equates to an average person's pain level of eight or nine.  *See* Doc. 12 at 12.  Plaintiff's argument reflects a skewed interpretation of Dr. Smith's records.  Dr. Smith noted that plaintiff was "uncomfortable looking" in her general appearance, which corresponds perfectly to the Wong-Baker "Faces" Pain Scale cited by plaintiff.  (Doc. 12 at 12, citing http://www.wongbakerfaces.org/).  Dr. Smith's observation that plaintiff was "tearful," however, was in regard to her mental status examination and not an observation as to her pain level.  *See* Tr. 546.  There is simply no basis for finding that the ALJ erred in describing the evidence as it relates to plaintiff's reported pain levels or by not attributing a higher level of pain to plaintiff than she herself reported.

Plaintiff also asserts the ALJ erred by not considering whether plaintiff's pain had a psychological basis.  In support, plaintiff cites to Social Security Ruling 88-13 which provides that in the absence of medical evidence substantiating alleged pain, the ALJ should consider whether a mental impairment is the source of the alleged pain.  *See* SSR 88-13, 1988 WL

236011, at *1 (1988).  Plaintiff's argument fails to recognize that the ALJ determined that

plaintiff suffered from severe chronic low back pain and chronic pain syndrome.  *See* Tr. 15.  The

portion of SSR 88-13 cited by plaintiff is irrelevant as the ALJ complied with the directives of

the Ruling as he found that plaintiff had medically determinable impairments that could

reasonably be expected to produce the pain alleged by plaintiff.  *See* SSR 88-13, 1988 WL

236011, at *1.

Fourth, plaintiff contends that because the ALJ's decision contains numerous

typographical errors – such as repeatedly referring to plaintiff as a "he" – that the Court should

interpret from these mistakes that the ALJ was haphazard in his review of the record and in his

decision-making process.  Plaintiff cites to no authority, nor is the Court aware of any,

countenancing such an approach.  The practice of courts in this Circuit is to correct typographical

errors where relevant, rather than construe them against the offending party.  *See*, *e.g.*, *Ramirez v.

Comm'r of Soc. Sec.*, No. 10-cv-12042, 2011 WL 3359689, at *1 n.1 (E.D. Mich. May 10, 2011);

*Smith v. Astrue*, No. 1:09-cv-2130, 2011 WL 10433742, at *9 n.4 (N.D. Ohio Mar. 18, 2011).

As the undersigned was able to engage in a meaningful review of the ALJ's substantive decisions

despite the errors identified by plaintiff, any potential errors were harmless.

For the above reasons, plaintiff's second assignment of error should be overruled.

3.  <u>The ALJ did not err in weighing the medical opinions of record</u>.

For her final assignment of error, plaintiff asserts the ALJ erred by relying on the

opinions of nonexamining state agency doctors which conflicted with the opinions of her treating

and examining doctors.  (Doc. 12 at 15-20).  Plaintiff contends the ALJ should not have placed

great weight on the reviewing physicians' opinions as their opinions were based on an

incomplete record and did not include a review of the treatment notes from her treating physician, Dr. Smith. Plaintiff further contends that the ALJ failed to adequately explain his rationale for discounting the opinions of plaintiff's consultative examiners, Sanjiv Lakhia, D.O., and Kevin Eggerman, M.D. Plaintiff concludes that the ALJ failed to give good reasons for discounting Dr. Smith's opinions. The Court will first address plaintiff's arguments as to Dr. Smith's opinions.

  a. *Dr. Smith, Plaintiff's Treating Physician*

  It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec'y*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

  "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec'y*, 710 F.3d 365, 376 (6th Cir. 2013) (citing

14

former 20 C.F.R. § 404.1527(d)(2)[3]).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance

the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the

opinion.  *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the

length, nature and extent of the treatment relationship and the frequency of examination.  20

C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544.  In addition, the

ALJ must consider the medical specialty of the source, how well-supported by evidence the

opinion is, how consistent the opinion is with the record as a whole, and other factors which tend

to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6);

*Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  The ALJ must give "good reasons" for not

according controlling weight to a treating physician's opinion.  *Wilson*, 378 F.3d at 544.  The

ALJ must likewise apply the factors set forth in §§ 404.1527(c)(3)-(6) and 416.927(c)(3)-(6)

when considering the weight to give a medical opinion rendered by a non-treating source.  20

C.F.R. § 404.1527(c).  When considering the medical specialty of a source, the ALJ must

generally give "more weight to the opinion of a specialist about medical issues related to his or

her area of specialty than to the opinion of a source who is not a specialist."  20 C.F.R. §§

404.1527(c)(5), 416.927(c)(5).

Dr. Smith treated plaintiff from March 2003 to February 2011 for chronic pain syndrome,

lumbar degenerative disc disease with radiculopathy, and depression.  (Tr. 405-660).  Dr. Smith's

progress notes show physical examination findings of muscle tenderness and spasm, swollen

---

[3]Titles 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012.  The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d) are now found at §§ 404.1527(c) and 416.927(c).

joints, stiffness, myalgias, and arthralgias for which Dr. Smith prescribed Methadone, Percocet, Motrin, Valium, Lorcet, Oxycodone, and Prednisone.  As for plaintiff's mental status, Dr. Smith frequently noted that plaintiff exhibited a flat affect and anxious mood, and was occasionally tearful.  (Tr. 412, 415, 418, 426, 431, 460, 466, 469, 472, 474, 546, 549, 551, 554, 556, 582, 586, 590, 594, 598, 602, 606, 610, 651, 655, 659). Plaintiff was also observed to be attentive, spontaneous, engaged in conversation, and with appropriate content and sound judgment (Tr. 433, 436, 439, 442, 445, 448, 477, 480, 483, 486, 489, 492, 497, 503, 506, 509, 511, 514, 518, 521, 523, 526, 529, 532, 535, 538, 542, 562, 565, 566, 570, 573, 575, 579), or described simply as "sensorium clear."  (Tr. 451, 453, 457).  From June 2010 to October 2010, plaintiff was described as having some passive suicidal thoughts, irritable mood, hesitant speech, paranoid thought content with suspicion of others, and flight of ideas.  (Tr. 631, 635, 639, 643, 647). Monthly treatment notes from November 2010 to February 2011 include Dr. Smith's observations that plaintiff had passive suicidal thoughts, irritable mood, hesitant speech, obsessive thoughts, and a guarded thought process.  (Tr. 614, 618, 622, 626).  Dr. Smith diagnosed plaintiff with depression and a manic disorder, and prescribed Amitriptyline and Seroquel.

On September 29, 2009, Dr. Smith wrote on a prescription pad that plaintiff was "totally disabled and not expected to return to work in the next twelve months."  (Tr. 402).  He listed her diagnoses as chronic pain syndrome and depression.  (Tr. 402).  The note provides no further explanation.

On May 24, 2010, Dr. Smith completed a Basic Medical Form and concluded that plaintiff could occasionally lift up to ten pounds, frequently lift up to five pounds, stand and walk

for two hours in an eight hour work day, for one-half hour at a time, and sit for one hour, for one-half hour at a time. Dr. Smith also noted that plaintiff was markedly limited in pushing/pulling, bending, and repetitive foot movements, and moderately limited in reaching and handling. Dr. Smith noted that plaintiff "desires and deserves assistance for basic primary health issues. I have personally bought her medications for time to time to make the point that her life is better in treatment." (Tr. 400).

On June 29, 2010, Dr. Smith completed a medical functional capacity assessment as to plaintiff's mental impairments. He opined that plaintiff was moderately limited in her abilities to: remember locations and work-like procedures; work in coordination with or proximity to others without being distracted by them; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Dr. Smith found plaintiff was markedly impaired in her abilities to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Smith concluded that plaintiff is unemployable and would be so for 12 months or longer. (Tr. 398).

The ALJ gave "little weight" to Dr. Smith's opinions, finding they were "not supported by the medically acceptable clinical and laboratory techniques nor are they consistent with other substantial evidence of record, including the opinions of the State agency medical consultants."

17

(Tr. 22).  The ALJ acknowledged that Dr. Smith's opinions that plaintiff was functionally disabled stood in stark contrast to the opinions of the state agency reviewing physicians, who did not review Dr. Smith's treatment notes because the notes were not made part of the record prior to the hearing.[4]  (Tr. 21).  In his decision, the ALJ questioned the authenticity of the treatment records, noting that they were signed on February 25, 2011, despite being records of treatment dating back to 2003.  (Tr. 21).  The ALJ also noted that the majority of the treatment records were "very repetitive with little to no explanation or specifics as to what [Dr. Smith's] opinions are."  *Id*.  The ALJ observed that while Dr. Smith made specific mental examination notations on his June 29, 2010 treatment notes (Tr. 647), he "essentially repeated the findings on examination in all of his subsequent reports . . . ."  (Tr. 21).  *See, e.g.*, Tr. 631, 635, 639, 643.  The ALJ also noted that Dr. Smith's treatment notes as they pertained to plaintiff's physical conditions were similarly repetitive and lacked a sufficient explanation for his opinions.  (Tr. 22, citing Tr. 645, 647).  While over the years Dr. Smith's progress notes repeatedly reflect findings of muscle spasms, tenderness to palpation of the lumbar paraspinal muscles, and radicular neuropathy symptoms (Tr. 406, 436, 442, 460, 486, 497, 520), there was no testing documenting these findings as noted by the ALJ.  (Tr. 22).  Further, Dr. Smith's examinations from June 29, 2010 to February 10, 2011, included no musculoskeletal examinations and none of the records show any positive neurologic findings.  *Id*.

At the outset, the Court notes the ALJ is not required to accept Dr. Smith's opinions that plaintiff is "totally disabled" and unemployable.  (Tr. 398-99, 402).  Whether a person is disabled

---

[4]The records were only obtained after the hearing due to repeated requests from the ALJ's staff.  (Tr. 21).  Plaintiff's attorney stated at the hearing that he had been unable to procure Dr. Smith's treatment records.  Dr. Smith also failed to respond to numerous requests for the records from the ALJ's staff.  (Tr. 35-36).

within the meaning of the Social Security Act, *i.e.*, unable to engage in substantial gainful

activity, is an issue reserved to the Commissioner and a physician's opinion that his patient is

disabled is not "giv[en] any special significance."  20 C.F.R. §§ 404.1527(c), 416.927(c).  *See*

*Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2008) (treating physician's opinions on issues

reserved to Commissioner are never entitled to controlling weight or special significance);

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of

disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation

and brackets omitted).

As for Dr. Smith's opinions regarding plaintiff's physical and mental limitations, the

undersigned finds that the ALJ's decision to discount these findings is supported by substantial

evidence.  Faced with the questionable nature of Dr. Smith's treatment notes, the lack of support

for his findings with clinical testing or examinations, and the inconsistency of his opinion with

the findings of the consultative examining physicians, the ALJ gave Dr. Smith's opinions little

weight.  Plaintiff asserts that the ALJ wrongly focused on the repetitive nature of Dr. Smith's

notes as well as the fact that they were all post-dated in questioning their authenticity.  Plaintiff

contends that the "repetitiveness" of Dr. Smith's findings is simply evidence of consistency and

the fact that they were post-dated only shows that Dr. Smith authenticated these records again in

2011.  This argument ignores the statements made by plaintiff's attorney at the hearing which

support the ALJ's decision to question the authenticity of Dr. Smith's records.  *See* Tr. 36

(questioning creation and maintenance of physician's records).  Further, while at first blush it

appears that Dr. Smith's voluminous treatment notes contain ample clinical findings supporting

his opinions, a closer review reveals that the notes simply reiterate the same findings from

previous visits.  Plaintiff argues this is simply due to the consistency of the findings.  Yet, the manner in which similar notes are grouped arguably creates doubt as to whether Dr. Smith observed precisely the same findings in plaintiff's physical and mental health on different visits for distinct time periods or whether the notes are repetitive due to computer generation.  For example, treatment notes from June 6 and June 27, 2003 include identical findings (and identical typographical errors) as follows:

> Pain Scale: 2 *General Appearance*: Comfortable appearing.  Reports taking medication as prescribed. *Respiratory*: Normal vesicular breathing; clear to auscultation without rales; rhonchi, or wheezes. *Neck*: supple, normal JVP without carotid bruit or thyromegaly *Musculoskeletal*: *Gait Station*: normal, *Spine*/Tenderness in sacroiliac joints bilateral, paraspinals msucle (sic) spassm (sic) in cervical, thoraic (sic) and lumbar spine. *Neurological*: left suprascapular nerve area in (sic) much improved. *Mental Status Exam*: Affect is flat.

(Tr. 415, 418).  Likewise, treatment notes from July, September, and November 2003 include verbatim findings:

> Pain Scale: 4 *General Appearance*: Comfortable appearing.  Reports taking medication as prescribed. *Respiratory*: Normal vesicular breathing; clear to auscultation without rales; rhonchi, or wheezes. *Neck*: supple, normal JVP without carotid bruit or thyromegaly *Musculoskeletal*: Tender in soft tissues of the paraspinals muscle on right lower lumbar. Spasm evoked by range of motion testing. *Neurological*: No acute Findings *Mental Status Exam*: Affect is flat.

(Tr. 406, 409, 412).  *See also* Tr. 439, 442, 448, 451, 454 (examination findings from March through December 2005 are largely identical).  Thus, while there are many clinical findings reported in Dr. Smith's records, their repetitive nature and the lack of substantiating tests provide a reasonable basis for questioning whether the findings accurately documented plaintiff's condition over time or are instead the product of repetitious electronic documentation.  In consideration of the nature of Dr. Smith's records, the testimony of plaintiff's counsel at the

hearing regarding same, and the dearth of objective testing supporting his opinions, the ALJ's decision to question the authenticity of Dr. Smith's treatment records is substantially supported.

As discussed further, *infra*, the ALJ gave greater weight to the opinions of the reviewing agency doctors and plaintiff's consultative examiners because those opinions were supported by testing and internally consistent. It is the ALJ's function to resolve inconsistencies and conflicts in the medical evidence, *see King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984), and the record reveals that the ALJ properly considered the totality of the evidence in the record in weighing the opinion evidence and in assessing plaintiff's RFC. Contrary to plaintiff's assertion, the ALJ provided sufficient reasons for giving "little weight" to Dr. Smith's findings, namely the lack of support for his findings and the questionable nature of his treatment records, as verified by plaintiff's own attorney at the hearing. The Court therefore finds that the ALJ did not err in discounting the weight provided to Dr. Smith's opinion.[5]

b. *The Consultative Examiners*

Plaintiff asserts the "ALJ also erred by failing to adequately state why he gave less weight to the opinions of the consultative examiners." (Doc. 12 at 15). Specifically, plaintiff contends that the ALJ's decision to discount the walking restriction assigned by consultative examining physician Sanjiv Lakhia, D.O., is deficient because the ALJ did not identify the evidence that contradicted this portion of Dr. Lakhia's opinion. Plaintiff further argues that the ALJ's decision to give "some weight" to the opinion of consultative examining psychiatrist, Kevin Eggerman, M.D., is wanting because "the ALJ did not specify how much weight 'some' is, and also (more

---

[5]Notably, in the section of the RFC form completed by Dr. Smith where he was to identify the observations and/or medical evidence supporting his RFC assessment, Dr. Smith identified no objective or clinical evidence; instead, he described plaintiff's appearance and need for primary health care. (Tr. 400). Dr. Smith's failure to identify any clinical or objective evidence supporting his decision further supports the ALJ's decision to give it

importantly) did not clarify <u>why</u> he did not assign more than 'some' weight." (Doc. 12 at 16). The Court will first address the weight afforded to Dr. Eggerman's opinion.

Plaintiff was evaluated by Dr. Eggerman for disability purposes on November 11, 2008. (Tr. 323-28). Plaintiff's chief complaint was "I get stressed out." (Tr. 323). Dr. Eggerman observed that plaintiff was intermittently tearful and had a diminished range of affect, reflecting depression. (Tr. 326-27). Her mood appeared depressed and anxious and her anxiety level was moderate. (Tr. 327). Her insight was fair and judgment was intact. Dr. Eggerman diagnosed mood disorder NOS and generalized anxiety disorder and assigned a Global Assessment of Functioning (GAF) score of 60. *Id*. Dr. Eggerman concluded that plaintiff's ability to relate to others, including fellow workers and supervisors, was mildly impaired; her ability to understand and follow simple directions was not impaired; and her ability to understand, remember, and carry out detailed instructions was mildly impaired. (Tr. 328) Her ability to respond appropriately to changes in a routine work setting was mildly impaired. *Id*. Dr. Eggerman found plaintiff's ability to response appropriately to work pressures in a usual work setting was moderately limited. *Id*.

The ALJ gave "some weight" to Dr. Eggerman's opinion and included a limitation in his RFC that plaintiff was precluded from working at a rapid pace or with strict production quotas. (Tr. 21). The ALJ noted that this limitation was included in response to Dr. Eggerman's finding that plaintiff was moderately limited in her ability to respond appropriately to work pressures. *Id*. Plaintiff argues that the ALJ erred by failing to fully explain: (1) what the ALJ meant by

---

"little weight." *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (supporting relevant evidence is proper factor to consider in weighing treating physician opinions).

affording Dr. Eggerman's opinion "some weight;" and (2) his decision to not give Dr. Eggerman's opinion more than "some weight."

Plaintiff's argument that the ALJ is required to precisely identify the weight given to Dr. Eggerman's opinion is without merit. The ALJ gave "some weight" to the opinion and "great weight" and "little weight" to other opinions of record. To the extent plaintiff makes a semantic argument regarding the ALJ's use of the term "some weight," this argument is not well-taken. The term "some weight" is commonly used by ALJs in disability decisions when weighing medical opinions. *See*, *e.g.*, *Moses v. Comm'r of Soc. Sec.*, 402 F. App'x 43, 45 (6th Cir. 2010). Here, the ALJ's use of "great weight," "some weight," and "little weight" indicates that "some weight" means that an opinion is given less than "great weight" and more than "little weight." As the undersigned was able to meaningfully review the ALJ's decision and contemplate the weight afforded the medical opinions of record relying on these terms, the Court finds that the ALJ's decision comports with the applicable regulations and rulings governing how the Commissioner is to weigh medical opinions of record.

As for plaintiff's contention that the ALJ should have provided a more detailed rationale for the weight afforded to Dr. Eggerman's opinion, any ostensible error in this regard is harmless. Dr. Eggerman found that plaintiff was not impaired or only mildly impaired in all realms of her mental functioning except for being moderately limited in her ability to respond to work pressures. (Tr. 328). The ALJ accepted this limitation and accommodated plaintiff by including the quota restriction in formulating her RFC. While the Court acknowledges the rationale provided by the ALJ on the weight afforded Dr. Eggerman's opinion was limited, plaintiff does not argue that further explication would lead to a different result or that the ALJ failed to

23

incorporate any of Dr. Eggerman's supported limitations in the RFC finding. Thus, reversal is not warranted even if the ALJ failed to fully explain the weight given to Dr. Eggerman's opinion.

Plaintiff further contends that the ALJ did not sufficiently explain the weight afforded to Dr. Lakhia's opinion. Dr. Lakhia examined plaintiff on February 23, 2009 on behalf of the state agency. (Tr. 349-56). Plaintiff exhibited normal gait and normal station in the standing and sitting positions. (Tr. 350). Range of motion limitations were noted in plaintiff's hip and lumbar spine, particularly with lumbar flexion. (Tr. 350). Hip flexion was limited as well, secondary to tight hamstrings. *Id.* Straight leg raise testing was negative bilaterally in the supine position, but at 65 degrees it triggered low back pain and discomfort. *Id.* No evidence of atrophy or spasm was noted. *Id.* Palpation from the cranium to the sacral area revealed tenderness at L3-L4 down to S1 in the midline paraspinals, slightly out of proportion to the applied pressure. (Tr. 351). Dr. Lakhia noted, "Quite dramatic responses were noted and I was asked to stop when I was gently palpating the sacral paraspinals on the right near the top of the gluteus maximus." *Id.* There were no signs of postural deformities or instability; no signs of heat, redness, effusion, synovitis or infection were noted from the spine, hands or feet; manual muscle testing of the bilateral upper limbs showed 5/5 strength throughout with no focal deficits, including 5/5 strength bilateral extensor hallucis longus. *Id.* An x-ray of her lumbar spine showed essentially normal findings with the exception of a mild anterior spur on the vertebral body of L4. (Tr. 350, 358).

Dr. Lakhia diagnosed plaintiff with a lumbar strain. Dr. Lakhia concluded that plaintiff would be able to occasionally lift 20 pounds and frequently lift 10 pounds without difficulty. She would be able to stand and/or walk at least two hours in an eight hour workday. She must periodically alternate sitting and standing to relieve her low back pain and discomfort "per her

24

report only." Dr. Lakhia further opined that plaintiff can sit less than six hours in an eight hour workday. Dr. Lakhia found no impairments with pushing and/or pulling or with hand or foot controls and no objective medical limitations that would limit plaintiff's ability to climb, balance, kneel, crouch, crawl or stoop. (Tr. 351-52).

The ALJ adopted Dr. Lakhia's opinion on plaintiff's need to alternate between sitting and standing and included this restriction in plaintiff's RFC. (Tr. 20). The ALJ noted that this portion of the opinion was given "great weight" because it was supported by the examination findings. *Id*. In contrast, the ALJ gave "little weight" to Dr. Lakhia's opinion that plaintiff was able to walk for at least two hours in an eight-hour workday citing a lack of supporting objective medical evidence.[6] *Id*.

The ALJ's decision to adopt one portion of Dr. Lakhia's opinion and reject another is supported by substantial evidence. Gary Hinzman, M.D., the state agency reviewing physician, opined that plaintiff would be able to stand and walk at least 6 hours in an 8 hour day based on his review of the record evidence, including Dr. Lakhia's examination, the February 2009 x-ray of plaintiff's spine, and other record evidence. (Tr. 366). Dr. Hinzman stated that "there is no evidence of nerve damage or muscle weakness. [Plaintiff] has a normal gait and station and x-rays show only minimal spurring and DDD." (Tr. 366). X-rays from February 2009 showed normal lumbar vertebral alignment, minimal degenerative endplate spurring at L3-L4, and calcification anterior to the L3 vertebral body of indeterminate significance. (Tr. 358). The ALJ reasonably declined to adopt the minimum hour range set forth in Dr. Lakhia's report based on

---

[6] The undersigned notes that Dr. Lakhia's opinion does not state, as plaintiff asserts, that plaintiff "cannot walk for more than two hours in an eight-hour day." (Doc. 12 at 15). Rather, Dr. Lakhia stated plaintiff "would be able to stand and/or walk *at least two hours* in an eight hour workday." (Tr. 351) (emphasis added). Therefore, Dr. Lakhia provided an opinion about plaintiff's minimum capabilities, not maximum capabilities as plaintiff represents.

Dr. Hinzman's opinion, the x-ray evidence, and unremarkable clinical observations, including normal gait and station.  *See* Tr. 350 (gait was observed without an assistive device and was normal; plaintiff had normal station in standing and sitting; she had normal ability to rise from table and walk on heels and toes; and she had normal ability to get on and off table); Tr. 326 (noting plaintiff ambulated without assistive devices, without antalgic behaviors, and also sat without antalgic behaviors).  Based on the lack of objective and clinical findings, the Court finds no error in the ALJ's decision with regard to the weight given to the consultative examining doctor's opinions.

### c. *The State Agency Reviewing Physicians*

Lastly, plaintiff argues the ALJ erred by giving "great weight" to the opinions of Dr. Hinzman, the state agency reviewing physician, and Roseann Umana, Ph.D., the state agency reviewing psychologist, because their opinions were not based on a complete review of the record.  (Doc. 12 at 15).  Plaintiff asserts that neither Dr. Hinzman nor Dr. Umana had the opportunity to review the treatment notes from Dr. Smith prior to tendering their opinion. Plaintiff contends that any opinion as to her mental or physical RFC that does not account for Dr. Smith's findings cannot possibly be considered as well-supported by the record.  (Doc. 12 at 15).

The Court finds that the ALJ's decision to give "great weight" to the state agency reviewing doctors is substantially supported for several reasons.  First, as stated above, the ALJ's properly discounted Dr. Smith's opinions because they lacked support and it was reasonable to question the authenticity of his records.  Second, while opinions of reviewing doctors based upon an incomplete review of the record may be a basis for reversal, *see*, *e.g.*, *Tinker v. Comm'r of Soc. Sec.*, No. 1:12-cv-420, 2013 WL 33223310, at *12 (S.D. Ohio July 1, 2013) (Report and

26

Recommendation), *aff'd*, 2013 WL 3819750 (S.D. Ohio July 23, 2013), such an outcome is not mandatory.  There is no regulation or case law that requires the ALJ to reject an opinion simply because medical evidence is produced after the opinion is formed.  Indeed, the regulations provide only that an ALJ should give more weight to an opinion that is consistent with the record as a whole.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  Here, the ALJ had the opportunity to review the entire record, including the opinions of the reviewing doctors, the consultative examiners, and the entirety of Dr. Smith's treatment notes.  The ALJ thoroughly explained his criticism of Dr. Smith's opinions and treatment notes and identified that he was giving great weight to the opinions of Dr. Hinzman and Dr. Umana because they were supported by objective medical evidence and were consistent with findings on examinations.  (Tr. 20-21).  The fact that these doctors did not have the opportunity to review Dr. Smith's treatment notes does not change the fact that his opinion was not supported by objective findings.  Third, plaintiff fails to acknowledge that the reason the state agency doctors were unable to review Dr. Smith's records is because plaintiff did not present them as evidence.  It is plaintiff's burden to present evidence to the Commissioner that she is disabled.  *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  *See also* 20 C.F.R. §§ 404.1512(a), 416.912(a) (plaintiff is required to provide medical evidence to the Commissioner to establish disability).  Plaintiff offers no explanation for her failure to produce these documents and her argument ignores the fact that the ALJ submitted several requests pre-hearing for the records and was only able to obtain the treatment notes post-hearing "due to the tireless efforts of the [ALJ]'s senior case technician . . . ."  (Tr. 21).  Given the nature of Dr. Smith's treatment notes and the lack of objective evidence supporting his

opinions, the Court finds that the ALJ reasonably relied on the opinions of the reviewing doctors in formulating plaintiff's RFC.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date:  11/25/13            s/Karen L. Litkovitz
                           Karen L. Litkovitz
                           United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LARRETTA COCHRAN,                                    Case No. 1:12-cv-772
     Plaintiff,                                    Dlott, J.
                                                     Litkovitz, M.J.

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.


### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).